UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA : 

v. : CASE No. 8:14-cr-512-T-17TGW

DAVID BROCK LOVELACE :

Defendant. :

## REPORT AND RECOMMENDATION

The defendant, David Brock Lovelace, proceeding pro se, requested to present orally a Motion to Suppress the Complaint based on a false statement in the complaint, and a Motion to Dismiss the Indictment based on the alleged violation of his right to a speedy trial. The motions were referred to me to conduct a hearing. After considering the parties' arguments and the case record, I recommend that the defendant's motions be denied.

I.

Several months before this case arose, the defendant was indicted on multiple charges of health care fraud and money laundering in this Court. Case no. 8:14-cr-164-T-23EAJ("the first case"). On November 14, 2014, while on bond in the first case, the defendant was arrested on a criminal complaint, alleging health care fraud similar to that in the first case.

On December 10, 2014, a grand jury returned this indictment against the defendant, charging him with one count of conspiracy to pay health care kickbacks, in violation of 18 U.S.C. 371, and one count of structuring to avoid reporting requirements, in violation of 18 U.S.C. 5324(a)(3) (Doc. 24). More specifically, it is alleged that the defendant engaged in a conspiracy to pay cash kickbacks to medical clinics and providers in exchange for biological test samples and patient information, which were used in the submission of reimbursement claims to Medicare for clinical diagnostic laboratory services performed on the samples (id.). The defendant is also charged with structuring the withdrawals of approximately $109,000 in cash that he had received from a clinical laboratory company to which he had previously sent biological test samples (id.).

The defendant retained *pro hac vice* counsel Matthew S. Pappas, and attorney Robert D. Eckard appeared on behalf of the defendant as local counsel (Docs. 28, 31). The defendant entered a not guilty plea to both counts (Docs. 26, 28).

On February 2, 2015, defense counsel filed, on the defendant's behalf, a Motion to Continue Trial (Doc. 42) and a Notice of Waiver of Speedy Trial, stating that the defendant "knowingly and voluntarily Waives

any Rights that he may have under the Speedy Trial Act and under the U.S. Constitution for a period of 180 days from the date of this filing"(Doc. 40). The court granted the motion and found, pursuant to 18 U.S.C. § 3161(h)(7)(A), that the ends of justice served by such continuance outweigh the best interest of the public and the defendant in a speedy trial (Doc. 44).

On March 27, 2015, the Court held a status conference, at which time defense counsel made an *ore tenus* Motion to Continue Trial, and Waiver of Speedy Trial, through December 31, 2015 (Docs. 52, 53). The court granted the motion, and found that the ends of justice served by the continuance outweigh the best interest of the public and the defendant in a speedy trial (Docs. 52, 54).

At the June 12, 2015, status conference, the defendant informed the court that his trial in the first case was scheduled for October 2015 (Doc. 73).[1] The Court then placed this case on the trial calendar for the November 2, 2015 trial term (Docs. 73, 74).

However, on October 5, 2015, lead counsel Matthew Pappas filed in the first case an "Emergency Motion To Continue Trial" due to

---

[1] In March 2015, Eckard moved to withdraw as local counsel (Doc. 50). That request was granted, and Darlene Barror became local counsel (Doc. 68).

infirmities, and Pappas was relieved as defense counsel in the first case (see Doc. 80). Furthermore, local counsel filed a Motion to Continue Trial in this case because it was unclear whether Pappas, who had not yet been relieved in this matter, would be able to proceed as counsel (Doc. 85). The court granted the defendant's Motion to Continue Trial (Doc. 82). The defendant also filed a waiver of his right to a speedy trial through December 2016 (Doc. 81). The Court accepted that waiver, finding that the ends of justice served by the defendant's waiver of speedy trial through December 31, 2016, outweighed the best interest of the public and the defendant in a speedy trial (Doc. 86). The Court scheduled a status hearing for February, 2016 (Docs. 87, 88).

In the meantime, the defendant's trial in the first case proceeded on November 30, 2015, through December 14, 2015 (see Docs. 362-381). The jury convicted the defendant on multiple counts, and the Court sentenced the defendant to fourteen and one-half years in prison (Doc. 408). The defendant appealed his conviction (Doc. 418), and Barror was appointed as defendant's appellate counsel (Doc. 437).

At the status hearing in February 2016, Pappas was relieved as counsel in this case, and Barror was directed to continue as defense counsel

(Doc. 91). Barror, on the defendant's behalf, made another *ore tenus* motion to continue the trial, which was granted (Docs. 91-93).

At the October 2016 status conference, the Court discussed scheduling the trial for March 2017 (Doc. 99). Defense counsel, in response, made an *ore tenus* motion to continue the trial, and the defendant waived his speedy trial rights through December 2017 (id.). The court granted the motion, and found that, pursuant to 18 U.S.C. § 3161(h)(7), the ends of justice served by such continuance outweigh the best interest of the public and the defendant in a speedy trial (see Docs. 99, 100, 101).

In April 2017, the Court set the trial for a date certain of July 17, 2017 (Doc. 105). The defendant responded by filing a Motion to Continue Trial for an indefinite period of time, and gave a detailed explanation for this request (Doc. 106). The motion stated, in part, as follows (id.):

> The Defendant has two on-going appeals following case 8:14-CR-00164 – Lovelace's prior case in front of Judge Merryday. Germain[e] to the issues in the case before this Honorable Court are some of the issues which are currently being appealed....
>
> A) The case before this Honorable Court involves DBL Management, LLC. This entity is the subject of the case on appeal and whether or not it is a sham corporation is being litigated.

....

C) The manner and means of the conspiracy are very similar. If the Court of Appeals agrees with Mr. Lovelace's position that the claims were not fraudulent, this would impact the position and disposition of the case before this Honorable Court.

....

5. Judicial resources would be saved and no risk of "a messy" situation would exist in the event that the Court of Appeals agrees with the Defendant and vacates case 8:14-CR-00164 based on the fact that Lovelace's position is that the claims he submitted were not fraudulent.

....

6. Undersigned Counsel believes if this case is scheduled for the Spring of 2018, the pending appeals can be resolved and trial may not be necessary at all.

....

Wherefore Undersigned Counsel prays that This Honorable Court will take this case off the July trial docket....

The Court granted the defendant's motion for a continuance of the trial (Doc. 109), and accepted the Defendant's Waiver of Speedy Trial through April 30, 2018 (Doc. 104), finding that the ends of justice served by such continuance outweigh the best interest of the public and the defendant in a speedy trial (Doc. 109). In January 2018, the defendant filed a personally

signed Waiver of Speedy Trial, extending the waiver through December 2018 (Doc. 111). The Court approved the waiver, finding that "that the ends of justice served by such continuance outweigh the best interest of the public and the defendant in a speedy trial" (Doc. 112).

In July 2018, the defendant filed a personally signed waiver of speedy trial through July 2019 (Doc. 118). The following month, the Eleventh Circuit issued a mandate affirming the defendant's convictions in the first case (Docs. 575, 577). The defendant was assigned to a prison in Arkansas.

In October 2018, defense counsel filed a Motion to Withdraw based on the defendant's request to represent himself in this matter (Doc. 120), and the motion was referred to me (Doc. 123). In order to allow time for the defendant to travel from the prison in Arkansas, oral argument on the motion was heard on December 13, 2018 (Docs. 121-122, 124-125). I granted the motion. As memorialized in my Order, I thoroughly cautioned the defendant on the dangers and disadvantages of self-representation (Doc. 129). I advised him that he would be restricted by the rules of the jail, and the limited access to materials there (id.). He nonetheless insisted that he represent himself. Accordingly, I found that the defendant knowingly and

voluntarily waived his right to counsel, and assigned attorney Barror as standby counsel (id.).

Additionally, at the hearing, the defendant stated that "I'd like to assert my right to a speedy trial" (see Doc. 141, p. 13). I advised the defendant (twice) that he was going to see Judge Kovachevich the following day, at which time he could tell Judge Kovachevich that he is asserting his speedy trial right (Doc. 141, pp. 13, 14). However, there is no indication in the record that the defendant asserted his speedy trial right at that status conference before Judge Kovachevich, or that the defendant otherwise retracted his speedy trial waiver through July 2019. To the contrary, based on the defendant's new pro se status, the Court directed the Government to reproduce all discovery to the defendant, and requested the Marshal or stand-by counsel to inform the Court of the defendant's computer access at the jail (Doc. 130). The defendant also subsequently requested time to file pre-trial motions (see Doc. 133).

On January 14, 2019, the defendant filed a "Status of Defendant's Ability to Appear Pro Se" representing that, at the Pinellas County Jail, he has no research capability or a laptop to type, and he therefore is unable to prepare any motions on his case (Doc. 132). On February 1,

8

2019, the court held a status hearing addressing those issues, and the defendant stated at that time that he would need one month to file pretrial motions (Doc. 133).

However, in March 2019, the defendant did not file any pretrial motions; instead, he filed a Motion to Transfer Defendant to BOP Pending Trial, due to an alleged lack of legal resources at the Pinellas County Jail (Doc. 135). The Government opposed the motion, arguing that the County Jail records were inconsistent with the defendant's claims that he lacked access to materials to prepare his defense (Doc. 138). Judge Kovachevich referred the matter to me, and I conducted an evidentiary hearing and filed a report that the evidence adduced at the hearing contradicted the defendant's claim that he did not have access to a laptop computer or legal research resources (Docs. 139, 140, 143).

On May 3, 2019, the Court held a status conference, and the defendant told Judge Kovachevich that he was ready to present orally a motion to suppress and a motion to dismiss (Doc. 145). Judge Kovachevich referred the motions to me, finding the oral presentation of the motions was acceptable. The motions were referred to me to conduct the hearing (id.). In

the interim, the court set a date certain of June 10, 2019, for the trial in this case (Doc. 155).

On May 8, 2019, the defendant argued before me his oral motions to suppress and dismiss (Docs. 151, 152, 153). Since the Government had not been apprised of the substance of the defendant's motions before the hearing, it was afforded the opportunity to file a post-hearing memorandum, which it did (Doc. 161).

The basis for the motion to suppress is that "there's a false statement in the complaint" (Doc. 158, p. 14). The defendant states that the complaint falsely asserts that it is illegal to pay cash kickbacks in exchange for DNA test samples and patient information (id., pp. 10-11). He contends that a regulation, 42 C.F.R. 411.351, makes that conduct "perfectly allowable" (id., p. 13). Accordingly, the defendant seeks to suppress the complaint (id., p. 14). He acknowledges that there is no statement or physical evidence that was seized from him that he is trying to suppress (id., p. 15).

The defendant next argued his motion to dismiss the indictment based on an alleged violation of his right to a speedy trial (see Doc. 158, pp. 16-21). He stated that four and one-half years have passed since he was arrested in this case, and that this is a presumptively prejudicial delay (id., p.

17). The defendant argued further that this delay is attributable to the government (id., pp. 17-18). In this respect, the defendant stated that, at a status hearing in late 2015 or early 2016, the Government counsel told the Court that it was not ready to go to trial (id.).

The defendant added that he had asserted his right to a speedy trial during a hearing before me (id., p. 17). I asked the defendant whether he was prejudiced by the lengthy delay. I attempted to guide him in this inquiry, asking him if there are any witnesses he intended to present, or if he was otherwise hindered in his trial preparation due to the delay, but the defendant was unable to articulate any actual prejudice (id., pp. 19-20). Thus, the defendant responded that he does not have any witnesses to present (id., p. 19). I specifically asked him if his co-defendant, Dale DuBois, would be a witness on his behalf, which the defendant said was a possibility (id., p. 20). However, that line of inquiry was cut short when Government counsel pointed out that DuBois pled guilty quickly, and that she will be a Government witness against the defendant at trial (id., p. 21). The defendant also mentioned that he has lost contact with everyone during his incarceration, but he also stated that he had not attempted to contact anyone from prison (id., pp. 19-20). I then asked again whether the defendant "can articulate any particular prejudice that [he] would suffer from going to trial

after a lengthy period of delay," and he responded that his "position is that it's presumptively prejudicial" and "[t]he government can offer no argument that I'm not prejudiced" (id., p. 21).

At the end of the defendant's argument, I asked him whether there was "[a]nything further you want to say about that motion," to which he said, "No, Your Honor" (id., p. 22). I also inquired whether the defendant had been "fully heard on th[ese] two motions," and the defendant responded, "Yes, Your Honor" (id., p. 22). The Government did not orally respond to the defendant's arguments, but was given until May 24, 2019, to file a written response (id., p. 23). The Government filed timely a "Consolidated Response in Opposition to Defendant's Oral Pre-Trial Motions" (Doc. 161).

II.

The motion to suppress is frivolous at best. The only thing that the defendant is trying to suppress is the complaint. However, the defendant has been indicted and the indictment completely supercedes the complaint.

Moreover, the defendant acknowledged that no statements or physical evidence was seized from him upon his arrest on the complaint. Thus, there is simply no evidence to suppress.

The government's response answers the defendant's argument that it was perfectly legal for him to pay cash for DNA swabs and patient

information.  However, it is not necessary to address that issue with respect to the motion to suppress, since that motion fails at the outset because there is nothing to suppress.

## III.

The defendant also seeks dismissal of the indictment, with prejudice, arguing that he was denied the right to a speedy trial under the Sixth Amendment of the United States Constitution.[2]  The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.  "The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the date of trial."  United States v. Knight, 562 F.3d 1314, 1323 (11th Cir. 2009).

---

[2]Although the defendant stated initially at the hearing that he was asserting violations of both the Speedy Trial Act and his constitutional right to a speedy trial, he did not argue that the Speedy Trial Act was violated in this case.  Further, after asserting his argument regarding a constitutional violation, I asked the defendant, your "argument [is] focused on the Sixth Amendment, correct?" to which the defendant responded, "It is" (Doc. 158, p. 19).  Moreover, after the defendant presented his constitutional argument, I asked him if he had been fully heard on his motions, and he responded, yes (Doc. 158, p. 22).  Therefore, any allegation of a statutory speedy trial violation is waived.  See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (although pro se pleadings are construed liberally, arguments not properly briefed are abandoned); see also Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) (issues raised in a perfunctory manner, without supporting arguments and authority are deemed abandoned).

The Supreme Court identified four factors to consider in determining whether there has been a violation of a defendant's Sixth Amendment right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) whether and how the defendant asserted the right to a speedy trial; and (4) the amount of prejudice suffered by the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972); United States v. Schlei, 122 F.3d 944, 987 (11th Cir. 1997).

The length of the delay must be "presumptively prejudicial" in order to trigger an inquiry into the other three factors. A delay is presumptively prejudicial as it approaches one year. Id.

On the other hand, even when there is a presumptively prejudicial delay, the defendant still retains the burden of proving the remaining factors in the speedy trial inquiry. United States v. Clark, 83 F.3d 1350, 1352 (11th Cir. 1996). Additionally, unless the first three Barker factors "weigh heavily against the government," a defendant generally must show actual prejudice to satisfy the fourth prong of the analysis. United States v. Register, 182 F.3d 820, 827 (11th Cir. 1999).

The defendant argued at the hearing that he satisfied the four prongs of the Barker test. The defendant was arrested on a complaint on

November 14, 2014, and was indicted by a grand jury on December 10, 2014. Thus, the time lapse of four and one-half years is presumptively prejudicial for the purpose of triggering an inquiry into the other three Barker factors. See United States v. Schlei, supra, 122 F.3d at 987.

The defendant contended that he also satisfied the remaining three Barker factors. Thus, he argued that the trial delays are attributable to the Government, and that he asserted his right to a speedy trial in a hearing before me (which took place on December 13, 2018) (Doc. 158, pp. 17,18). Moreover, although the defendant concedes that he cannot show actual prejudice, he contends that the presumption of prejudice is sufficient to support the dismissal of the indictment in this case.

The Government responds, accurately, that the defendant

> neglects to mention that he personally requested or consented to each or every delay since his indictment either by signed waivers of his speedy trial rights and/or by orally waiving those rights in open court and filing motions to continue his trial. The docket establishes that the defendant knowingly and expressly waived his right to a speedy trial--personally and through his defense counsel--no fewer than seven times.

(Doc. 161, p. 8).

Thus, the defendant submitted waivers of his right to a speedy trial throughout this time period--for the years of 2015, 2016, 2017, 2018, and up through July 2019 (Docs. 40, 52-54, 81, 99, 106, 118). Some were submitted on the defendant's behalf by his attorneys, and others were personally signed by the defendant. See Fayson v. Secretary of Florida Department of Corrections, 568 Fed. Appx. 771, 773-774 (11th Cir. 2014) (an attorney may waive a speedy trial on his client's behalf).

Furthermore, not only did the defendant knowingly and voluntarily waive his speedy trial rights repeatedly, he filed motions to continue the trial each time the court placed the case on the trial calendar, with the exception of the current trial date (see Docs. 42, 85, 100, 105, 106).[3] In this regard, the docket reflects an accumulation of delays that are solely attributable to the defendant.

Thus, lead counsel became infirm soon before the November 2015 trial date, necessitating a continuance of the trial, and ultimately resulting in the Court relieving lead counsel of his representation of the defendant; the defendant also requested the Court to continue the trial

_____

[3]The court did not schedule a trial for 2018, while the defendant was awaiting the outcome of his appeals. Soon after his conviction in the first case was affirmed, the defendant moved to represent himself, which further delayed rescheduling the trial.

pending the outcome of his appeals in the first case, the outcome of which was germaine to the charges in this case; and the defendant's decision to proceed pro se led to delays in order to investigate the defendant's claims that he did not have access to legal materials to prepare for trial. Notably, awaiting the outcome of the defendant's appeals, in itself, resulted in a delay of two and one-half years (March 2016-August 2018).

These circumstances (with the exception of the defendant's unsupported allegations that he did not have access to necessary legal resources) are reasonable bases to continue the trial, and were approved by the Court in order to insure the defendant receives a fair trial in this case. Nevertheless, the delays, which cumulatively amounted to four and one-half years, are attributable to the defendant.

The defendant, in support of his argument that the delay was caused by the Government, argues that, "[i]n late 2015 or early 2016, [he] was in Judge Kovachevich's courtroom with the prior government counsel and [Judge Kovachevich] asked government counsel directly if he was ready for trial and he said no. And that was the reason for the delay. There's nothing else" (Doc. 158, pp. 17-18). The defendant has not identified any record citation supporting this contention.

To the contrary, the case record belies the defendant's contention that delays in late 2015 or early 2016 were attributable to the Government. Thus, it was the defendant who sought a continuance of the November 2015, trial date due to lead counsel's infirmities, and an overlap with his trial in the first case (Doc. 85). Furthermore, in early 2016, lead defense counsel was relieved from representing the defendant (Docs. 85, 91, 92, 93).

In all events, even if the Government was not ready for trial at one point in time, that does not render the Government responsible for the cumulative delays in this matter, nor does such a circumstance weigh heavily against the Government. See United States v. Schlei, supra, 122 F.3d at 987 (different reasons for delay are accorded different weight; a Government delay that occurs for valid reasons, as opposed to frivolous, dilatory, or bad faith conduct, will not be accorded heavy weight against the Government.).

In sum, the reasons for the delay in this case is not a factor that weighs against the Government. Rather, as indicated, the cumulative effect of these delays are squarely attributable to the defendant.

The next Barker factor is "whether and when the defendant asserted the right to a speedy trial." See United States v. Schlei, supra, 122 F.3d at 987. The defendant argued that he asserted his speedy trial right at a

hearing before me (Doc. 158, pp. 15, 17). That hearing took place on December 13, 2018 — four years after his arrest in this case.

The record undercuts the defendant's implicit contention that he aggressively sought to exercise his right to a speedy trial. Thus, the defendant waived his right to speedy trial multiple times, covering the years 2015, 2016, 2017, 2018, and up through July 2019. Furthermore, as indicated, it was the defendant who moved to continue each trial date.

The defendant states, correctly, that he may assert his right to a speedy trial at any time. However, the fact that four years passed before the defendant asserted his right to a speedy trial is a consideration in this analysis. Furthermore, after asserting his speedy trial right before me, the defendant said nothing about a speedy trial during a status conference the following day before the trial judge. To the contrary, the minutes from that status conference indicate that, based on the defendant's new pro se status, the defendant was not ready to proceed to trial. Thus, the Court directed the Government to reproduce all discovery to the defendant, and the Court directed the Marshal or stand-by counsel to advise her of the defendant's computer access at the jail. The defendant also subsequently requested time

to file pre-trial motions. Thus, at that point, the case was beginning anew in certain respects.

Therefore, in these circumstances, the fact that the defendant asserted his right to a speedy trial (four years into this case) does not state a persuasive argument for finding that the defendant vigilantly asserted his trial right. See United States v. Dunn, 345 F.3d 1285, 1296 (11th Cir. 2003). In all events, this factor, which the defendant states is "a critical element for the dismissal" of this case (Doc. 158, p. 15), certainly does not weigh against the Government, as any delay following the defendant's purported assertion of his speedy trial right was attributable to the defendant.

The final Barker factor concerns the amount of prejudice suffered by the defendant. United States v. Schlei, supra, 122 F.3d at 988. As indicated, where, as here, the other Barker factors do not "weigh heavily against the government," the defendant must show actual prejudice to warrant dismissal of an indictment pursuant to Barker. United States v. Register, supra, 182 F.3d at 827.

A defendant may demonstrate actual prejudice in one of three ways: "(1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) the possibility that the accused's defense will be impaired."

United States v. Dunn, supra, 345 F.3d at 1296-97. The third is the most important consideration. United States v. Schlei, supra, 122 F.3d at 988.

The defendant was unable to put forth a single argument that the delay in his trial resulted in any actual prejudice to him (Doc. 158, p. 19). I attempted to guide him in this inquiry, asking specific questions whether his ability to defend himself was hindered by the delay. However, the defendant stated that he has no witnesses to call at trial. He speculated that his co-defendant, Dale DuBois, may be a witness for him; however, the Government quickly clarified that DuBois pled guilty early in the process and would be testifying against the defendant at trial. The defendant stated further that he has not been in contact with anyone since he has been in jail; however, he also did not attempt to contact anyone. Thus, as to this factor, the defendant stated repeatedly that he is relying upon the delay being "presumptively prejudicial" (Doc. 158, p. 21), which, as stated supra, p. 20, is insufficient in this matter.

The defendant also argued that "[t]he government can offer no argument that I'm not prejudiced" (Doc. 158, p. 21). However, this contention shows a misapprehension of the legal burdens in this case. Thus, even when there is a presumptively prejudicial delay, the defendant retains

the burden of proving the remaining factors in the speedy trial inquiry. United States v. Clark, 83 F.3d 1350, 1352 (11th Cir. 1996).

With regard to whether the defendant had anxiety or concern, I note that, at the hearing, the defendant did not express anxiety; to the contrary, the defendant appeared confident that he will be able to prove to the jury that his actions did not violate the law. Moreover, the defendant has not demonstrated in any way that the conditions under which he was held, or the length of his confinement, rendered the delay a constitutional violation. In this regard, the defendant was initially detained pre-trial because he had violated his bond in the first case, he was then released, and he subsequently began serving his 14 year sentence on the first case at a federal prison in Arkansas.

In sum, although the time lapse of four and one-half years is presumptively prejudicial for the purpose of triggering a Barker inquiry, the remaining factors do not weigh against the Government. See Barker v. Wingo, supra, 407 U.S. 514; United States v. Clark, 83 F.3d 1350, 1352 (11th Cir. 1996). Thus, it is unquestionable that these trial delays were requested by the defendant, and that the Court granted these requests to insure that the defendant had every opportunity to be prepared and have a fair trial in this

case. Therefore, the defendant has not shown that his Sixth Amendment constitutional right to a speedy trial was violated in this case. See Barker v. Wingo, supra, 407 U.S. 514 (rejecting a Sixth Amendment violation despite a five-year delay).

IV.

For the foregoing reasons, I recommend that the defendant's oral Motion to Suppress the Complaint and Motion to Dismiss for a Sixth Amendment violation of his speedy trial rights be denied.

Respectfully submitted,

Thomas G. Wilson
_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: MAY 3 l, 2019

NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.